896 F.2d 547
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michelle Tanya GREEN, Defendant-Appellant.
 No. 89-5610.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 27, 1989.
Decided: Feb. 5, 1990.
 
 (Henry E. Hudson, United States Attorney; Dorcas Alayne Jones, Special Assistant United States Attorney) on brief, for appellee;
 (Charles Shepherd Cox, Jr.) on brief, for appellant.
 Before DONALD RUSSELL, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 In a set of circumstances not infrequently arising in trials of alleged drug offenders, the defendant, Michelle Tanya Green, was charged and convicted of possession of cocaine with the intent to distribute. Green came to the attention of a Drug Enforcement Agency operative and a Washington, D.C. airport authority police detective sergeant on her arrival at the District of Columbia airport on a shuttle flight from an airport near New York City.
 
 
 2
 The sergeant, Grimes, had his attention attracted to Green because of her meeting and conversation with someone else who was acting in what the law enforcement people regarded as a nervous manner. Grimes approached Green and identified himself, asking if he could talk to her. Green's response was in the affirmative. Grimes then asked for and got permission to search Green's bag. She was "sure she didn't mind" and the search of the bag turned up no contraband. DEA agent Johnston then spoke up to ask if Green would permit his search of the coat she had on. She responded by starting to remove items from the coat, showing them to Johnston. Johnston then asked Green if she would mind if he did the inspection of the coat himself, to which request assent was given by Green. The search yielded over 250 grams of crack cocaine, which in time duly developed as an important item introduced in evidence during the trial in which Green was convicted.
 
 
 3
 There are recently decided cases in which we have emphasized the no little difference between an unpermitted search or seizure on the one hand or a consensual search (not even amounting to a Terry stop)[1] on the other. The facts of Green's case present a clear cut example of a consensual stop, which a police officer may make of any one whether or not he or she had justifiable reason, because the person accosted was entirely free to leave. It was followed by other acts, particularly the inspection of the coat, which Green assented to, though free to refuse.
 
 
 4
 Green attempted to make much of the fact that she was never advised that she was free to leave or that she could refuse to let Grimes and Johnston make the inspections to which she had assented. In addition, she has complained that she was never advised during the encounter with Grimes and Johnston of the possible consequence of such a search. However, the truth is in fact self-evident. Grimes and Johnston never interfered with Green's freedom to leave nor did they attempt to search her or her accoutrements without her assent. The possible consequence of an inspection would be evident, without one having to be informed that contraband might be discovered in the carrying out of such a permitted search.
 
 
 5
 Consequently, a warrant was not necessary in view of an altogether voluntary submission--a consent--to a request for permission to search, not contested on any factual basis. The abstract theories advanced do not accord with reality. Suppression of the crack would have been unwarranted.
 
 
 6
 We are satisfied that the briefs and record enable us to decide the case without the necessity of oral argument. Accordingly, the judgment is
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 Terry v. Ohio, 392 U.S. 1 (1968)